# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| PATRICK B. FIELD and LISA | ) | Case No.  04-00028-TLM |
| FIELD, d/b/a Pat Field Farms, | ) | |
| | ) | |
| Debtors. | ) | MEMORANDUM OF DECISION |
| | ) | |
| _____ | ) | |

**INTRODUCTION**

Patrick and Lisa Field ("Debtors") objected to the proof of claim of Les Bois Leasing ("Creditor"), Claim No. 19, that asserts a $375,000.00 secured claim. *See* Doc. No. 167. Debtors object on the basis that the value of the liened property and the amount of senior secured debt render the claim fully unsecured. *Id.* Following Creditor's response to the objection, Doc. No. 170, a hearing was held on March 7, 2005.

Having considered the evidence presented at hearing, and the parties' arguments at hearing and in their briefing, the Court will sustain Debtor's objection but only in part. The Court concludes Creditor has a $176,406.52 allowed secured claim. The following constitutes the Court's findings of fact and

MEMORANDUM OF DECISION - 1

conclusions of law. Fed. R. Bankr. P. 9014, 7052.[1]

**BACKGROUND AND FACTS**

Several years ago, Debtors filed a petition for chapter 12 bankruptcy relief. *See* Case No. 02-04013-TLM.[2] In early January, 2003, Creditor and a related party, Charles Ver Mett,[3] initiated an adversary proceeding objecting to the dischargeability of the debts owed by Debtors under § 523(a)(2) and objecting to the entry of Debtors' discharge under § 727(a). In July 2003, at the time set for trial in that action, Debtors appeared with counsel and stipulated to entry of a judgment declaring a $456,000.00 debt to Creditor nondischargeable under § 523(a)(2) and § 523(a)(4). *See* Adv. Case No. 03-6004-TLM at Doc. No. 16 (judgment). On August 5, 2003, Creditor filed its judgment in the real property records of Owyhee County, Idaho. *See* Debtors' Ex. 31.

Shortly after the adversary proceeding was closed, Creditor moved to dismiss Debtors' chapter 12 case. That motion was granted and the case was dismissed on September 11, 2003.

---

[1] Debtors' objection to claim presents a contested matter. *See* Fed. R. Bankr. P. 3007. Creditor's opposition, which raises an issue of valuation of security, is similarly a contested matter. *See* Fed. R. Bankr. P. 3012; *In re Millspaugh*, 302 B.R. 90, 97 n.12, 04.1 I.B.C.R. 25, 27 n.12 (Bankr. D. Idaho 2003).

[2] Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of its files in Case No. 02-04013-TLM and the related adversary, Adv. Case No. 03-6004-TLM.

[3] The Court's use of the term "Creditor" in this Decision will refer to both Les Bois Leasing and Mr. Ver Mett in those situations where both are involved.

MEMORANDUM OF DECISION - 2

Debtors filed the instant case as a chapter 11 on January 6, 2004.[4] Among Debtors' declared assets is a co-ownership interest in 436.85 acres of real estate in Owyhee County, Idaho. *See* Doc. Nos. 14, 31, 64 (schedules and amended schedules).

On February 2, 2004, Creditor filed a proof of claim, No. 7, asserting a $456,000.00 unsecured debt based on the stipulated adversary judgment.[5] Debtors proposed several chapter 11 plans, each treating Creditor as unsecured. Creditor objected to each plan on several grounds, including an assertion that it held a secured claim.

Debtors converted their case from chapter 11 to chapter 12 in December, 2004, prior to any confirmation of a chapter 11 plan.

On December 20, 2004, Creditor filed an amended proof of claim, No. 19, claiming $375,000.00 of the $456,000.00 debt was secured by a judgment lien on Debtors' property and the balance of $81,000.00 was unsecured. Debtors objected to this asserted secured claim, alleging Creditor was wholly unsecured based on the absence of any unencumbered value in the property subject to Creditor's

---

[4] Debtors' counsel in the present case is not the same attorney as involved in the prior reorganization and adversary proceeding.

[5] Debtors' schedules also listed the debt to Creditor as unsecured. *See* Doc. Nos. 14, 31 (at schedules D, F).

MEMORANDUM OF DECISION - 3

judgment lien.[6]

## DISCUSSION AND DISPOSITION

### A. Judicial Estoppel

Debtors' post-hearing brief raised, for the first time, an issue of judicial estoppel. Debtors contend that, because Creditor initially filed its proof of claim showing a $465,000.00 wholly unsecured debt and gained advantage in the chapter 11 stage of this case due to that position,[7] it should be estopped from now asserting a $375,000.00 secured claim and $81,000.00 unsecured claim through an amended proof of claim.

Judicial estoppel is a flexible equitable doctrine that encompasses a variety of abuses, one form of which is preventing a party from gaining an advantage by taking one position and then seeking another advantage by asserting an inconsistent position. *Alary Corp. v. Sims (In re Associated Vintage Group, Inc)*, 283 B.R. 549, 565-66 (9th Cir. BAP 2002); *accord, New Hampshire v. Maine*, 532

---

[6] In moving to avoid Creditor's judgment lien under § 522(f) as impairing a homestead exemption, Debtors questioned the timing of the judgment's recordation. *See* Doc. No. 65. However, Debtors did not press the point, and the issue of the lien's validity was not presented for decision. And the instant objection to Creditor's claim does not squarely present an argument that the lien should be found invalid due to its recording during the pendency of the prior chapter 12 case. Were Debtors to properly raise such issues, the decision in *Palm v. Klapperman (In re Cady)*, 266 B.R. 172 (9th Cir. BAP 2001), *aff'd* 315 F.3d 1121 (9th Cir. 2003), would appear to be controlling.

[7] The perceived advantage was the ability to "control the unsecured class" and, thus, "block [chapter 11] confirmation," an argument apparently based on § 1129(b)(2)(B)(ii). *See* Doc. No. 196 at 4; *see also* Doc. No. 206 at 6.

MEMORANDUM OF DECISION - 4

U.S. 742, 749-51 (2001); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-85 (9th Cir. 2001); *Cheng v. K & S Diversified Invs., Inc. (In re Cheng)* 308 B.R. 448, 452-460 (9th Cir. BAP 2004). The doctrine has been recognized and applied by this Court. *In re Moore*, 269 B.R. 864, 869-70, 01.4 I.B.C.R. 147, 149 (Bankr. D. Idaho 2001); *In re Pich*, 253 B.R. 562, 568-70, 00.4 I.B.C.R. 183, 185-87 (Bankr. D. Idaho 2000).

Judicial estoppel may be invoked by a litigant or at the Court's discretion. *New Hampshire*, 532 U.S. at 750; *Hamilton*, 270 F.3d at 782. The Supreme Court in *New Hampshire* emphasized that there are no "inflexible prerequisites" to its application. 532 U.S. at 751. However, the factors generally noted as supporting application of the equitable doctrine are (i) the existence of inconsistent positions advanced by a party, (ii) an acceptance of the earlier position by the court to whom it is advanced, and (iii) either prejudice to an adverse party or creation of an impression that the legal process is being misused or manipulated. *Id*.

The Court concludes the requisite factors do not exist in this case. True enough, Creditor submitted an initial proof of claim alleging a wholly unsecured nonpriority debt, even though it was well aware that it had recorded the judgment. However, other than filing its proof of claim, Creditor never advanced the assertion that it held an entirely unsecured debt in Debtors' chapter 11 case. Instead, Creditor consistently objected to Debtors' chapter 11 plan treatment of the

MEMORANDUM OF DECISION - 5

debt as unsecured, claiming that its judgment lien on the nondischargeable debt made it a secured creditor. *See* Doc. Nos. 68, 72, 103, 112 (objections to confirmation, each stating that "[Creditor] objects to being classified wholly as an unsecured creditor" and explaining Creditor had recorded a judgment lien against Debtors' property based on a nondischargeable debt). *See also* Doc. No. 133 (objection to proposed sale alleging that Creditor had a secured claim and a right to "credit bid" under § 363(k)). While the proof of claim was inconsistent, it appears to be a matter of neglect or oversight rather than an attempted manipulation or stratagem.

Moreover, Debtors have not shown that they relied to their prejudice on Creditors' characterization, in its initial proof of claim, that the debt was unsecured. The existence of the putative lien was known to Debtors. For example, Debtors requested that Creditor's lien be avoided on their homestead even before Creditor first objected to the chapter 11 plan and asserted its claim was secured. *See* Doc. No. 65. Nor did Debtors show that the Court accepted and relied on the inconsistent position.

Thus the Court concludes that the elements for application of judicial estoppel are not present, and judicial estoppel will not be applied to bar the amended proof of claim which simply clarifies Creditor's position.

### B. Value of the property

Debtors originally listed their "undivided one-half interest" in a 436.85 acre parcel of Owyhee County, Idaho property as worth $850,000.00. *See* Doc. No. 14 at schedule A (asking for the "current market value of debtor's interest in property, without deducting any secured claim or exemption"). *See also* Doc. No. 31 at schedule A (February, 2004 amendment). However, this appears to be a value for the entire property, and not just Debtors' interest in it. In June, 2004, Debtors amended their schedules to reflect a $425,000.00 value for their one-half interest in this property. *See* Doc. No. 64 at schedule A.[8]

At the March 7 hearing, both Debtors and Creditor approached the valuation issue by submitting an appraisal prepared by Russell E. Turner in 2004, on behalf of Creditor, that arrived at a value for the whole of the subject property of $920,000.00. *See* Creditor's Ex. 8. Debtor Patrick Field testified he believed Mr. Turner's $920,000.00 final value conclusion was accurate.[9]

Mr. Field also testified that the property was "worth $1.2 million" to him. An owner's opinion as to the value of his property is admissible, but is not

---

[8] Information provided in Debtors' schedules may be treated as evidentiary admissions under Fed. R. Evid. 801(d).

[9] Debtors submitted an exhibit with a $955,000.00 value for the property, purportedly from the same Turner appraisal. *See* Debtors' Ex. 30. The inconsistency between this $955,000.00 figure and the $920,000.00 final value figure reached by Turner was explained at hearing as flowing from an error on Debtors' part in photocopying Turner's appraisal.

MEMORANDUM OF DECISION - 7

determinative and, depending on the basis for the opinion, may not be particularly probative. *See In re Smith*, 313 B.R. 785, 791 (Bankr. N.D. Ind. 2004) (noting that while an owner is always competent to testify to value under Fed. R. Evid. 701, the owner must still have some basis for his opinion that does not conflict with the court's valuation standards). Mr. Field's comment regarding a $1.2 million value might be relevant to the extent it suggests what a willing buyer would pay to purchase the 436 acre parcel of property. *See Taffi v. United States*, 96 F.3d 1190, 1192 (9th Cir. 1996) (en banc) (holding that the fair market value "is the price which a willing seller under no compulsion to sell and a willing buyer under no compulsion to buy would agree upon after the property has been exposed to the market for a reasonable time"). However, Mr. Field noted that he did not believe he could find someone to buy the property for that amount. Therefore, Mr. Field's testimony regarding his subjective valuation of the property is not particularly probative or determinative of market value.

    The Turner appraisal is the most recent appraisal of the property. Neither Debtors nor Creditor claim the appraisal is inaccurate. Neither provides equivalent objective evidence of value. Though Creditor argues for an increase in the value based on Mr. Field's testimony, it was clear from that testimony that Mr. Field did not believe a buyer could be secured at the higher price. Therefore, based on the evidence presented, the Court concludes the subject property has a

MEMORANDUM OF DECISION - 8

market value of $920,000.00.

### C. Value of Debtors' interest in the property

#### 1. Extent of Debtors' interest

Debtors claim "an undivided one half interest" in the 436.85 acres, as co-owners with Mrs. Field's parents, Alvin and Jean Dalley. Doc. No. 64 at schedule A. Creditor argues that Debtors own more than a one half interest based on the history of transactions related to or involving the purchase of the property and the parties' respective contributions toward purchase.

The property was purchased for $680,000.00. The Dalleys contributed the entire down payment, which the February 1994 sale agreement indicates was approximately $174,000.00. The remaining purchase price of $506,000.00 was to be paid through an assignment of lease payments totaling $114,400.00 and a promissory note for the remaining $391,600.00. *See* Debtors' Ex. 4.

While the Dalleys were the only listed purchasers in the February, 1994 sale agreement (perhaps not surprisingly given the fact that acquisition was in part made through a "1031 exchange" of property owned by the Dalleys), Mr. Field's testimony indicated the parties intended the property be acquired jointly. Several documents also reflect Debtors' involvement and interest: Debtors signed an indemnification agreement dealing with the assignment of lease payments in March, 1994 (Debtors' Ex. 5); Debtors were listed in the escrow instructions as

MEMORANDUM OF DECISION - 9

taking title as "tenants in common" with the Dalleys (Debtors' Ex. 6); Debtors received "an undivided one half interest" in the property under a quitclaim deed signed by Rellis Dorius (Debtors' Ex. 7); Debtors signed, along with the Dalleys, the mortgage note and mortgage completing the sale of the property in June 1994 (Debtors' Exs. 8, 9); and Debtors again signed a promissory note and mortgage with the Dalleys in 1996 as holders of undivided one half interests in the property (Debtors' Exs. 12, 13, 14).

The weight of the evidence indicates the Dalleys and Debtors were tenants in common, sharing an equal interest in the property. The fact that the Dalleys contributed the amounts or value initiating the purchase of the property does not alter this conclusion. The intent of the parties, as shown through testimony and other evidence, supports the assertion that the Dalleys and Debtors hold undivided one half interests in the property. Creditor presented insufficient evidence for the Court to conclude that the ownership interests should be allocated in any different percentage.

When a debtor who is a joint tenant files bankruptcy, only the debtor's interest becomes property of the bankruptcy estate. *See* § 541(a)(1). Although the joint tenancy interest may run to the entire property, the estate does not obtain an interest in the entirety but, instead, obtains the joint tenant's undivided one-half interest. Thus, the Ninth Circuit has recognized that the bankruptcy estate has a

MEMORANDUM OF DECISION - 10

one-half interest in the jointly held property, while the joint tenant retains the other one-half interest. *See Dumas v. Mantle (In re Mantle)*, 153 F.3d 1082 (9th Cir. 1998); *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1322-23 (9th Cir. 1991); *accord Gorman v. Cochrane (In re Gorman)*, 159 B.R. 543 (9th Cir. BAP 1993).

### 2. Debt and equity calculations

Debtors and the Dalleys refinanced the property in November 1996 for $500,000.00 through North Cascades National Bank. *See* Debtors' Exs. 13, 14. They paid off the initial seller, and Debtors used the remaining funds to pay personal debts. The North Cascades promissory note and mortgage were eventually assigned to U.S. Bank. Debtors and Creditor concede that U.S. Bank is validly secured in the property.

U.S. Bank filed a proof of claim for $651,645.39 as of January 6, 2004. *See* Debtors' Ex. 21. In addition, the Owyhee County Treasurer filed a $15,618.62 proof of claim for past due taxes secured by the property. *See* Debtors' Ex. 19. There has been no objection to either the U.S. Bank or the Owyhee County claims and they are therefore treated as *prima facie* evidence of the claims' validity and amounts. Fed. R. Bankr. P. 3001(f).

While there has been no formal objection to the U.S. Bank claim, Creditor points out that for the purposes of valuation of its lien under § 506(a), the entire U.S. Bank claim should not be considered. The U.S. Bank proof of claim

MEMORANDUM OF DECISION - 11

expressly includes an "estimated prepayment fee of $100,077.05 which is only due [when] prepayment is made." Debtors' Ex. 21 at 2 and at attached Ex. 10.

Debtors' plan does not propose to prepay the U.S. Bank secured claim. The Court therefore concludes that the $100,077.05 prepayment fee should not presently be included in the amount of U.S. Bank's claim against the property for purposes of calculating the value of Creditor's lien under Rule 3012. The Court finds for the purposes of the instant Decision that the consensual U.S. Bank mortgage debt against the 436.85 acres is $551,568.34[10] and the Owyhee County tax debt against that property is $15,618.62.[11] Debtors and the Dalleys have, collectively, $352,813.04 net equity in the property.[12] Debtors' undivided one-half interest is thus valued at $176,406.52. Creditor's judgment lien attaches to Debtors' interest, and its claim is therefore secured to this extent. Idaho Code § 10-1110.[13]

---

[10] $651,645.39 - $100,077.05 = $551,568.34

[11] Both the U.S. Bank and Owyhee County claims are senior to Creditor's judgment lien. Further, the entirety of the property is subject to those mortgage and tax debts, while the judgment lien attaches only to Debtors' interests in the property under Idaho Code § 10-1110.

[12] $920,000.00 (total property value) - $551,568.34 (U.S. Bank claim without prepayment fee) = $368,431.66 - $15,618.62 (Owyhee County claim) = $352,813.04 (net equity in property).

[13] Idaho Code § 10-1110 states:

A transcript or abstract of any judgment or decree of any court of this state or any court of the United States the enforcement of which has not been stayed as provided by law, if rendered within this state, certified by the clerk having custody thereof, may be recorded with the recorder of any county of this state, who shall immediately record and docket the same as by law provided, and from the time of such recording,

(continued...)

Debtors dispute this analytical approach. They argue that there is no equity in the property to which Creditor's lien can attach. *See*, *e.g.*, Doc. No. 196 at 11. However, they subtract the entire amount of the U.S. Bank and Owyhee County obligations from their one-half interest. This is not consistent with the evidence which shows that the Dalleys and Debtors are jointly obligated on the U.S. Bank debt, and that the bank's claim is secured by the interests of both families in the property.

U.S. Bank's debt and the taxes encumber the entire property and are not limited to Debtors' half interest. *See Thurston v. Holden*, 45 Idaho 724, 265 P. 697 (1928) (stating that "conscience requires equality among parties equally responsible for a common burden [and] [e]quity demands that one of them shall not bear the burden in ease of the others"); *see also supra*, note 11. Any attempt to collect either the U.S. Bank claim or the Owyhee County tax claim through recourse to collateral would be made against the entire 436.85 acres. Thus, it appears logical that these debts must be deducted from the value of the property as a whole. Only then can the net value of the property be determined. That value would then be divided to determine Debtors' one half interest to which Creditor's judgment lien can attach. Debtors have not adequately supported their alternative

---

[13](...continued)
and not before, the judgment so recorded becomes a lien upon all real property of the judgment debtor in the county, not exempt from execution, owned by him at the time or acquired afterwards at any time prior to the expiration of the lien[.]

MEMORANDUM OF DECISION - 13

approach, either legally or factually.

Debtors also argue, for the first time in their closing brief, that the U.S. Bank debt is larger than that used above because it accrues interest, at 8.75% according to Debtors, from the date U.S. Bank's proof of claim was filed. *See* Doc. No. 196 at 10-11. Debtors submit that a "conservative [interest] figure due" would be $69,516.57 and should be added to the face amount of the claim. *Id.*[14] Debtors' calculations in briefing, however, are not evidence. The hearing provided the opportunity to present evidence, and that opportunity was not utilized to prove the degree to which U.S. Bank's claim did or would increase under § 506(b).

### D. Effect of valuation

Valuations are made in light of the purpose of valuation and the proposed disposition and use of the property. *See* § 506(a). Here, Debtors attempt to propose and confirm a chapter 12 plan. Since, on the present evidence, Creditor has an allowed secured claim of $176,406.52, Debtors would need to address that secured claim under one of the provisions of § 1225(a)(5).[15]

---

[14] Debtors calculated interest using the $651.645.39 claim amount. That amount, however, includes the $100,077.05 prepayment fee, and Debtors' calculations are thus obviously in error. Moreover, there are additional issues concerning the assumptions made by Debtors and the accuracy of their calculations.

[15] That section authorizes plan treatment of an allowed secured claim in one of three ways: through whatever manner the creditor might accept, § 1225(a)(5)(A); through surrender to the creditor of the property securing the claim, § 1225(a)(5)(C); or through plan provisions that
(continued...)

Since the presently proposed chapter 12 plan does not do so but, instead, treats Creditor's claim as fully unsecured, an amendment would appear necessary. And since the nature and terms of any amended plan are as yet unknown, the Court concludes it would be improvident for it to opine on other issues relating to plan treatment (whether its treatment of this secured claim, or treatment of the $279,593.48 balance of the claim as unsecured, or treatment of the lien securing a nondischargeable debt), or the relationship of the plan and confirmation to the nondischargeable nature of the judgment.[16]

**CONCLUSION**

Debtors' objection to Creditor's proof of claim, seeking a determination that the same is fully unsecured, is not well taken. However, that objection, to the extent it disputed Creditor's assertion of a $375,000.00 secured claim will be sustained, in part, as the valuation process under Rule 3012 establishes that the allowed secured claim of Creditor is $176,406.52. The Court will enter a separate order in accord with this Decision.

---

[15](...continued)
allow the creditor to retain the lien and receive payments of a value, as of the effective date of the plan, not less than the allowed secured amount of the claim, § 1225(a)(5)(B)(i), (ii).

[16] The "reserved" issues include the arguable effect of § 506(d) on the judgment lien given both (i) the valuation of the secured claim under § 506(a) and (ii) the nondischargeable nature of the judgment.

MEMORANDUM OF DECISION - 15

DATED: April 28, 2005



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE