# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| **PATRICK B. FIELD and LISA** | ) | **Case No.  04-00028-TLM** |
| **FIELD, d/b/a Pat Field Farms,** | ) | |
| | ) | |
| **Debtors.** | ) | **MEMORANDUM OF DECISION** |
| | ) | |
| _____ | ) | |

## INTRODUCTION

Patrick and Lisa Field ("Debtors") filed the instant case as a chapter 11 on January 6, 2004.  Debtors proposed several chapter 11 plans, but, prior to confirming a plan, Debtors converted their case from chapter 11 to chapter 12 in December, 2004.  *See* Doc. No. 153.

On June 7, 2005, Debtors proposed their Second Amended Chapter 12 Plan (the "Plan").  *See* Doc. No. 224; *see also* Ex. 15.  Two creditors objected to the Plan, Les Bois Leasing, Inc. ("Les Bois") and U.S. Bank.  *See* Doc. Nos. 228, 229. In addition, the chapter 12 trustee, Forrest Hymas ("Trustee"), recommended confirmation of the Plan but only if its terms were altered by an amendment or in a confirmation order to address several concerns.  *See* Doc. No. 233.

A confirmation hearing was held on August 10, 2005, and the matter was

MEMORANDUM OF DECISION - 1

taken under advisement. After careful consideration, the Court concludes

Debtors' Plan cannot be confirmed. The following constitutes the Court's

findings of fact and conclusions of law. Fed. R. Bankr. P. 9014, 7052.

**BACKGROUND AND FACTS**

### A. Creditors secured in real property

Debtors have a farming operation in Owyhee County. Among Debtors'

scheduled assets is a co-ownership interest in 436.85 acres of real estate in

Owyhee County, Idaho (the "Farm").[1] *See* Doc. Nos. 14, 31, 64 (schedules and

amended schedules). Three creditors are secured in the Farm: U.S. Bank, Les

Bois and Owyhee County.

### 1. U.S. Bank

U.S. Bank filed a secured proof of claim for $651,645.39. *See* Claim No. 4.

Debtors' Plan proposes to pay U.S. Bank semi-annually, amortizing the debt over

twenty five years. *See* Ex. 15 at 4-5. The Plan assigns a 7% interest rate to the

repayment and proposes a $29,500.00 payment each January and July, beginning

in July, 2005 and concluding with a balloon payment in January, 2015. In effect,

this proposal lowers the interest rate from the contract rate, amortizes the debt over

a period longer then that contemplated by the contract, and extends the deadline

---

[1] Debtors also own a residence located on two acres in Grandview, Owyhee County, Idaho. In the Plan, Debtors deal with that parcel of land and the creditor secured therein separate and apart from the Farm.

MEMORANDUM OF DECISION - 2

for the balloon payment by three years.

The Trustee's recommendations voiced concerns regarding the proposed timing of the payments to U.S. Bank. The Trustee's analysis indicates Debtors will not have positive cash flow in July, and he recommended moving U.S. Bank's July payments to October of each year. Recognizing the validity of the Trustee's cash flow concerns, Debtors made an oral motion at the confirmation hearing to modify (among other things addressed below) the dates of payment to U.S. Bank to March and October, with the first payment to be made in October, 2005.[2]

U.S. Bank had objected to confirmation based on the 7% interest rate proposed by Debtors, arguing that contract rate of interest, 8.75%, should be found to be the appropriate market rate. Once – and only after – U.S. Bank raised this issue, Debtors abandoned the 7% interest proposed in the Plan and urged a 4.5% interest rate as the appropriate market rate. Debtors' oral motion for modification of the Plan included the proposed reduction in interest to U.S. Bank from 7% to 4.5%, and, predictably, U.S. Bank objected.[3]

### 2. Les Bois

On February 2, 2004, Les Bois filed a proof of claim asserting a

---

[2] Debtors' analysis of the Trustee's objection led them to conclude altering the January payment to March was equally sound.

[3] While U.S. Bank's primary objection to confirmation and its legal arguments centered around the last minute modification and interest rate, it also objected to the extended amortization of its loan past the original twenty years and to other aspects of the Plan's treatment of its claim.

MEMORANDUM OF DECISION - 3

$456,000.00 unsecured debt based on a stipulated adversary judgment entered in connection with Debtors' prior chapter 12 proceeding.[4]  On December 20, 2004, Les Bois filed an amended proof of claim, claiming $375,000.00 of the $456,000.00 debt was secured by a judgment lien on Debtors' Farm and the $81,000.00 balance was unsecured.  *See* Claim No. 19.  Debtors objected to Les Bois' asserted secured claim, and, on April 28, 2005, the Court determined that Les Bois held a $176,406.52 claim secured by Debtors' interest in the Farm.  *See* Doc. No. 215.[5]

Debtors' Plan provides for payment on Les Bois' $176,406.52 secured claim over a twenty five year period.  Ex. 15 at 6.  Debtors propose to pay $5,000.00 annually for the first five years and $7,570.33 annually for the remaining twenty years.  The Plan does not propose to pay any interest on Les Bois' secured claim, instead stating "Les Bois is not an oversecured creditor."  At the end of the twenty five years, Debtors propose to pay all remaining amounts

---

[4] Several years ago, Debtors filed a petition for chapter 12 bankruptcy relief.  *See* Case No. 02-04013-TLM.  During that case, Debtors stipulated to entry of a judgment declaring a $456,000.00 debt to Les Boise nondischargeable under § 523(a)(2) and § 523(a)(4).  *See* Adv. Case No. 03-6004-TLM at Doc. No. 16 (judgment).  Debtors' chapter 12 case was dismissed on September 11, 2003, and Debtors filed this case as a chapter 11 on January 6, 2004.  Debtors' counsel in the present case is not the same attorney as involved in the prior attempted reorganization or adversary settlement.

[5] The Court's prior Decision, Doc. No. 215, provides greater discussion of the nature of Debtors' interest in the Farm and the nature of the secured claims.

MEMORANDUM OF DECISION - 4

due Les Bois in full.[6]

In addition, Debtors' Plan seeks to impose a post-petition injunction against creditors, including creditors holding nondischargeable judgments such as Les Bois, to prohibit any attempted collection until January 1, 2012.  Ex. 15 at 17. Debtors' attorney clarified at hearing that the injunction was intended to prohibit any enforcement or collection, but not intended to preclude Les Bois from "renewing" its judgment against Debtors.  In addition, Mr. Field acknowledged that some sort of refinancing or other solution would need to be formulated prior to January, 2012 to satisfy Les Bois' claim.  Otherwise, Les Bois' ability to enforce its judgment post-injunction would render Debtors unable to continue farming.

Les Bois objected to confirmation on several grounds.  First, Les Bois argued that Debtors' proposed injunction improperly treated its lien rights and was in effect an attempt to discharge a nondischargeable debt.  Second, Les Bois objected to the absence of interest on its secured claim.  Third, Les Bois objected to confirmation of Debtors' Plan for lack of good faith.  Fourth, Les Bois argued the Plan's treatment of Howard Field's claim as a creditor secured in equipment is improper, and this claim should be disallowed, or at the least, subordinated.

---

[6]  In addition to no clear indication of payment of interest during the 25 year period, there is nothing to indicate any accrual of interest payable at the end of that period.

MEMORANDUM OF DECISION - 5

Finally, during oral argument, Les Bois made several feasibility arguments.

### 3.    Owyhee County

The Owyhee County treasurer filed a proof of claim for $15,618.62.  *See* Claim No. 22.  The Plan proposes to pay the pre-petition taxes owed to Owyhee County on the Farm over a period of ten years with interest at 12%.  *See* Ex. 15 at 6.  Debtors' annual payments to Owyhee County will be $2,100.60.  Owyhee County has not objected to Plan confirmation.

### B.  Other secured creditors

### 1.    Howard Field

Mr. Field's brother, Howard Field, acquired a secured interest in Debtors' equipment, crops and accounts receivable by purchasing the claim of Washington Mutual Bank.  He filed a $185,017.59 secured proof of claim.  *See* Claim No. 15. The Plan proposes to amortize this debt over 25 years and defer payment to Howard Field until 2009, at which point Debtors would begin making $8,000.00 annual payments at 6% interest, with a balloon payment in December, 2018.  *See* Ex. 15 at 6-7.

Howard Field has agreed to this treatment.  *See* § 1225(a)(5)(A).  While he acknowledges his collateral (Debtors' equipment) will depreciate over the initial four years during which he would not be receiving payment, he nonetheless supports Debtors' attempt to reorganize.

MEMORANDUM OF DECISION - 6

Even though this treatment of Howard Field's secured claim assists

Debtors' efforts to reorganize, Les Bois objects.  It argues, among other things,

that Howard Field's claim should be disallowed altogether, or be equitably

subordinated, or be allowed only in the amount Howard Field actually paid for the

assignment of Washington Mutual's claim.[7]

### 2.    Deere & Company

Deere & Company filed two proofs of claim, one for $3,265.64 and the

other for $25,699.30, both secured by Debtors' equipment.  *See* Claim Nos. 1, 2.

The Plan provides for annual payments on these claims at 6% interest from 2005

to 2008.  *See* Ex. 15 at 7.  The Plan contemplates an initial payment 30 days after

confirmation and then again in December, 2005.  Deere & Company did not object

to confirmation of the Plan.

**DISCUSSION AND DISPOSITION**

### A.    Debtors' motion to modify the Plan

Debtors' proposed preconfirmation modification of the Plan attempts to

alter the dates of payment to U.S. Bank and to reduce the interest rate paid on U.S.

---

[7] Les Bois' arguments are flawed on several levels.  First, no objection has been filed by
Les Bois to the proof of claim, No. 15, filed by Howard Field.  *See* Fed. R. Bankr. P. 3007.  That
claim is therefore allowed.  *See* § 502(a), (b).  Second, the theory of equitable subordination was
not properly advanced.  *See* Fed. R. Bankr. P. 7001(8) (requiring an adversary proceeding to
subordinate a claim under § 510).  Third, Les Bois' arguments that the assignee of a claim may
assert or enforce such claim only to the extent of the consideration paid for the claim, were not
persuasively advanced or adequately supported.  Thus, these contentions of Les Bois will not be
considered further in this Decision.

MEMORANDUM OF DECISION - 7

Bank's secured claim.

### 1.    Notice

Section 1223 allows a debtor to modify a plan "at any time before confirmation, but [the debtor] may not modify the plan so that the plan as modified fails to meet the requirements of section 1222." Section 1223 goes on to state that "[a]fter the debtor *files* a modification under this section, the plan as modified becomes the plan." Section 1223(b) (emphasis added).

Here, Debtors never "filed" a modification. Instead, they made an oral motion to modify at the conclusion of the confirmation hearing. Debtors apparently rely on Fed. R. Bankr. P. 9013 which indicates a motion must be made in writing "unless made during a hearing." They ignore, however, Fed. R. Bankr. P. 2002(a)(5) which requires twenty days notice of the time fixed to accept or reject a proposed modification of a plan. But the flaw in the request is not solely a matter of the Rules. There is also a question of fundamental due process.

Debtors argue that oral modifications of plans are regularly made at chapter 12 and 13 confirmation hearings and incorporated in the confirmation order. That is undeniably true. But these are consensual resolutions of disputes, or modifications that resolve a trustee's concerns but do not adversely effect creditors. Debtors may not orally suggest modifications at the hearing that adversely effect creditors without providing such creditors a reasonable

MEMORANDUM OF DECISION - 8

opportunity to respond.  For this reason and in light of Rule 2002(a)(5), the

proposed modification was improper.  The Court concludes U.S. Bank's objection

to the oral motion should be sustained.

### B.    Treatment of secured creditors

Even if modified, a plan must comply with the requirements of § 1222.

Though debtors may alter the rights of holders of secured claims, *see* § 1222(b)(2),

the treatment of secured creditors must meet the requirements of § 1225(a)(5).

Absent a creditor's acceptance of plan treatment (§ 1225(a)(5)(A)) or surrender of

its collateral (§ 1225(a)(5)(C)), a debtor's plan must provide that the creditor

retain its lien securing the claim, and that "the value, *as of the effective date of the*

*plan*, of property to be distributed by the trustee or the debtor under the plan on

account of such claim [be] not less than the allowed amount of such claim."

Section 1225(a)(5)(B)(ii) (emphasis added).  The question of the appropriate

interest rate needed to provide such value to U.S. Bank was hotly contested.

### 1.    The "effective date of the plan"

Debtors argue that the date of the filing of their petition is the effective date

of the Plan.  Their proposed modification of the interest rate to U.S. Bank of 4.5%

reflected their interpretation of the appropriate interest rate, under *Till v. SCS*

*Credit Corp.*, 541 U.S. 465 (2004), as of the date their petition was filed.  There

MEMORANDUM OF DECISION - 9

are several problems with Debtors' argument.[8]

First, Debtors have never amended or modified their Plan provision that expressly defines the effective date of the plan as "the date on which the order confirming the plan is non-appealable." Ex. 15 at 10. Thus, their arguments are in contravention of their own Plan.

Second, even had Debtors attempted to modify the Plan's definition of effective date, they provided little authority that the effective date should be the petition date. Debtors cite *In re Cashu*, 321 B.R. 716, 720 (Bankr. E.D. Cal. 2005), for the proposition that the effective date of the plan should be the date the petition was filed. However, *Cashu* was based on a definition of effective date found in the Eastern District of California's form chapter 13 plan. The model chapter 13 plan in the District of Idaho has no such definition, and this District has no model chapter 12 plan.

The Code does not define "the effective date of the plan." However, treatise authority and case law support the idea that the effective date should be no earlier than the date of the confirmation hearing.

In the context of determining the present value issue in chapter 11 cases,[9] a

_____

[8] Even though the modification has been found improper, *supra*, the issue of the effective date remains as U.S. Bank objected to the Plan's original 7% rate as well as the modified 4.5% rate.

[9] "[C]ourts and commentators have generally treated the question of how the cram down interest rate should be determined as a question that is answered the same in Chapter 11, 12 and
(continued...)

MEMORANDUM OF DECISION - 10

leading authority notes that:

> Most often, the effective date of the plan will be tied to the absence of
> any successful appeals from the order of confirmation, or the
> satisfaction of conditions contained in the plan.  In the absence of any
> contrary indications, and since the chapter 11 discharge is effective
> upon confirmation absent contrary indications in the plan, the date the
> confirmation order is entered should be the effective date.

7 Collier on Bankruptcy ¶ 1129.06[1][e], 1129-171 (Alan N. Resnick & Henry J.

Sommer, eds. rev. 15th ed. 2004) (footnote omitted).  In the context of the chapter

13 cram down provision, § 1325(a)(5)(B), Collier notes that:

> The effective date of the plan will ordinarily be provided for by
> the plan, and may be the date as of which the order confirming the
> chapter 13 plan becomes final.  However, the Court will normally
> determine present value as of the date of the hearing on confirmation
> held under section 1324, because, as a practical matter, confirmation
> will almost always follow within a brief time after the issues raised
> under section 1325(a)(5)(B)(ii) are resolved.

8 Collier, ¶ 1325.06[3][b][i], 1325-31 (footnote omitted).  In addition, Collier

notes that "the effective date itself might be unknown until the plan is actually

confirmed, because, although the effective date of the plan is usually the date the

order of confirmation becomes final, the plan may provide a later effective date."

*Id.* at ¶ 1325.05[2][a], 1325-17.

Case law is in accord.  Recently, in *In re Prussia Associates*, 322 B.R. 572,

---

[9](...continued)
13 cases" as the operative Code provisions in each chapter contain the same phrase: "value, as of
the effective date of the plan."  *In re Yett,* 306 B.R. 287, 291 (9th Cir. BAP 2004).  Thus,
Collier's analysis of chapter 11 and chapter 13 cramdown provisions is equally applicable to
chapter 12.

MEMORANDUM OF DECISION - 11

590-91 (Bankr. E.D. Pa. 2005), the court "quickly register[ed] its disagreement with the Debtor's contention that the relevant prime rate of interest is that which existed on the date its reorganization plan was filed." The court noted that the Code required interest to be provided as of the effective date of the plan and such date was the date the confirmation order was entered.

*In re Novak*, 252 B.R. 487, 491 (Bankr. D.N.D. 2000), discussed the timing of chapter 12's best interest of creditors valuation under § 1225(a)(4), which is also determined "as of the effective date of the plan." It dismissed an argument that valuation should be made as of the date the petition was filed. *See also In re Case*, 115 B.R. 666, 671 (9th Cir. BAP 1990) (determining that the appropriate rate of interest under § 1225(a)(5)(B)(ii) was the fair market rate at the time of confirmation); *In re Bremer*, 104 B.R. 999, 1006 (Bankr. W.D. Mo. 1989) (quoting *In re Perdue*, 95 B.R. 475 (Bankr. W.D. Ky. 1988), for the proposition that the "'effective date of the plan' can logically refer only to the date of confirmation and not the date of the filing of the bankruptcy petition").

In *In re Musil*, 99 B.R. 448, 450 (Bankr. D. Kan. 1988), the court observed that "'[e]ffective' in common parlance means 'ready for service or action; to effect.' 'Effect' in turn means 'a quality or state of being operative.' Webster's New Collegiate Dictionary (1975)." The *Musil* court concluded that "a debtor may not define the effective date as the date of the filing of the petition, and . . .

MEMORANDUM OF DECISION - 12

the effective date can be no earlier than the date the first confirmable plan is heard." 99 B.R. at 451.

Finally, this Court in *In re McIntyre*, 95 I.B.C.R. 202, 206 (Bankr. D. Idaho 1995), concluded that, in the absence of an express provision fixing the effective date, the effective date of the confirmed plan was the date of the confirmation hearing.

Debtors' attempted modification of the interest rate paid on U.S. Bank's secured claim to 4.5% was expressly based on the "prime rate" on the date the petition was filed in January, 2004, which was markedly lower than the prime rate at the time of the confirmation hearing in August, 2005.[10] So, even absent the procedural problems with the attempted modification, Debtors' approach to the question of the "effective date of the plan" is unsupported and their modification could not be allowed.

###   C.    The Plan as proposed

The Court asked Debtors' counsel if Debtors would wish to proceed to seek confirmation of the Plan in the event their motion to modify was denied. The Court received no clear answer. The Court thus continues its analysis of the Plan

---

[10]  As the court in *Cashu* observed, there is no universal, national "prime rate" and each bank has its own prime rate to reflect market demands and the interests of that institution. 321 B.R. at 720 n.4. Since both Debtors and U.S. Bank asked the Court to take judicial notice of the bank prime loan rate as reported at *www.federalreserve.gov/releases*, it agreed to do so in this case. However, U.S. Bank's relevancy objection to Debtors' reliance on the bank prime loan rate on the date the petition was filed is well taken and will be sustained given the resolution of the "effective date" issue.

MEMORANDUM OF DECISION - 13

and the various creditors' objections to confirmation.

### 1.    The Trustee's recommendations and concerns

The Trustee's recommendations regarding confirmation[11] were dependant not just upon resolution of creditors' objections but also upon specific changes to Debtors' Plan.  Debtors' motion to modify included some of those changes, along with the proposed interest rate change for U.S. Bank.  U.S. Bank's objection to the attempted modification has been sustained.  Thus, the Trustee's conditions for approval of the Plan have not been fulfilled.  The Court concludes the Trustee's concerns are credible, and the current Plan may not be confirmed.

### 2.    Interest to secured creditors

#### a.    U.S. Bank

As previously noted, if a secured creditor does not accept the proposed treatment of its claim, the plan must provide that the secured creditor retain its lien and "the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim."  *See* § 1225(a)(5)(B).  In other words, a plan must provide for interest if payments are made over time, so that the value ultimately received is not less than the amount of the claim.  *See Yett*, 306 B.R. at 293 (noting that providing the value of secured claims as of the effective date of

---

[11]  The trustee's recommendations are given great weight.  *See McIntyre*, 95 I.B.C.R. at 206.

MEMORANDUM OF DECISION - 14

the plan "'is typically accomplished by ascribing an interest rate to the allowed

amount of the claim and by requiring payment of the amount of the claim along

with interest at the specified rate.'" (quoting *Farm Credit Bank v. Fowler (In re*

*Fowler),* 903 F.2d 694, 696 (9th Cir. 1990)).

Debtors' Plan proposes 7% interest on payments of U.S. Bank's secured

claim. However, U.S. Bank argues such a rate is inadequate under *Till*.[12] In *Till,*

the Supreme Court announced the appropriate method of determining the rate of

interest on cramdown loans in chapter 13. In a plurality opinion, *Till* adopted a

"formula approach." 541 U.S. at 478-81. Under the formula approach, the trial

court must begin its analysis with a prime interest rate and make upward

adjustments based on the risk of nonpayment. *Till* left the appropriate amount of

upward risk adjustment up to the trial court given the facts of the case, but noted

that a typical upward adjustment might be 1% to 3%. *Id.* at 480. *Till* places the

burden on the creditor to prove that an upward adjustment to the prime interest

rate is required under the facts of any given case. *Id.* (stating that "starting from a

concededly *low* estimate and adjusting *upward* places the evidentiary burden

squarely on the creditors, who are likely to have readier access to any information

---

[12] U.S. Bank also objected to the extended amortization of the loan and balloon payment
date beyond the time frames of the original contract. Section 1222(b) permits Debtors to propose
a plan providing payment on secured claims for a period exceeding the plan's payment period for
unsecured claims. There is no maximum time prescribed by the Code. Thus, the Court looks to
good faith and market standards in the proposed modification of the creditor's rights. *See* Collier,
¶ 1225.03[4][b] at 1225-17 to 1225-19. However, given the other defects in treatment of U.S.
Bank's claim, and the other impediments to confirmation, the Court need not address these issues.

MEMORANDUM OF DECISION - 15

absent from the debtor's filing"). The Court listed several relevant factors in determining an appropriate risk adjustment, such as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan. *Id.* at 479.

Here, U.S. Bank argues that its prebankruptcy contract rate of 8.75% is also the appropriate *Till* formula rate. U.S. Bank relies on a prime rate, as of the confirmation hearing of 6.5% and thus effectively urges a risk adjustment of 2.25% under *Till.*

U.S. Bank argues that Debtors' past conduct with it (including an extended period without payment) and Debtors' treatment of other creditors supports the suggested adjustment. However, *Till* instructs that the interest rate determination must be objective, not subjective. "[A] court choosing a cram down interest rate need not consider the creditor's individual circumstances, such as its prebankruptcy dealings with the debtor or the alternative loans it could make if permitted to foreclose." *Id.* at 476-77. Debtors' past conduct does not support a significant risk adjustment.

U.S. Bank is an oversecured creditor; its $635,746.37 claim is secured by a senior lien on real property valued at $920,000.00. Such a secured position also militates against U.S. Bank's suggested 2.25% risk adjustment.

U.S. Bank notes that Debtors are (and have for sometime been) in

MEMORANDUM OF DECISION - 16

bankruptcy. Debtors are clearly struggling to put together a reorganization plan that deals not only with U.S. Bank, but also a number of other claims, most significantly a $465,000.00 nondischargeable judgment. The existence of such a large, nondischargeable debt, and the other facts noted in this Decision, puts the possibility of a successful reorganization in serious doubt. These factors do support a risk adjustment. However, of the creditors, U.S. Bank is still the most securely protected.

Fundamentally, U.S. Bank has not provided the Court with many persuasive reasons for elevating the interest rate too far beyond its suggested bank prime rate as of August 10, 2005 of 6.5%. The Court concludes upon the totality of the evidence that a risk factor of 1.5% is appropriate. Using the bank prime loan rate as of the date of the hearing as an initial guide, the Plan would have needed to provide an 8.0% interest rate on U.S. Bank's claim.[13] It does not and, therefore, it cannot be confirmed. U.S. Bank's objection is well taken.

### b. Les Bois

The interest rate adjustment issue involving U.S. Bank's claim is by no means the only problem involving cram down of secured creditors. Les Bois objects to the Plan's proposed treatment of its $176,406.52 allowed secured claim.

---

[13] As noted above, the Plan defines "effective date" differently, and changes in prime rate would have an impact. Under the circumstances, it is enough to note that the 7% interest rate in the Plan is insufficient.

MEMORANDUM OF DECISION - 17

Specifically it objects to the Plan's failure to provide *any* interest at all on the deferred payments on that claim.[14]

Debtors argue they do not need to provide interest on Les Bois' allowed secured claim because Les Bois is undersecured. *See* Doc. No. 237 at 10-11. Debtors confuse the application of § 506(b) with the requirements of § 1225(a)(5)(B). Section 1225(a)(5)(B) makes no distinction between undersecured and oversecured creditors; it speaks only in terms of allowed secured claims.

Section 506 distinguishes between undersecured and oversecured creditors, but only in computation of the allowed secured claim. Under § 506, an undersecured creditor has an allowed secured claim to the extent of the value of the collateral while an oversecured creditor is also entitled to interest and reasonable fees, costs or charges to be included in its claim. *See* § 506(a), (b). Collier explains:

> If the secured obligation is oversecured, . . . the method of determining the allowed amount of the claim differs [from undersecured claims]. Section 506(b) provides that the amount of a

---

[14] Les Bois also claims the Plan fails to provide for the retention of its lien. The Plan appears to provide generally that all secured creditors will retain their liens. *See* Ex. 15 at 6, 16. Les Bois' argument that its lien is not retained is based in large part on the injunction language found within the Plan. *Id.* at 17. Les Bois argues that such language would preclude it from renewing its judgment and maintaining its lien in effect. Debtors clarified at hearing that they did not intend to preclude Les Bois from renewing its judgment, only from executing on it until 2012. The Court concludes the positioning of the lien retention provision is, at best inartful, as it does not clearly apply to Les Bois and because Debtors' "clarification" regarding the injunction was not in the Plan as proposed. Therefore, the objection based on § 1225(a)(5)(B)(i) is well taken.

MEMORANDUM OF DECISION - 18

> secured claim will also include postpetition interest and reasonable fees, costs, and charges provided for under the agreement under which the claim arose, but only up to the value of the property securing the claim. Accordingly, the allowed amount of the secured claim that must be treated under section 1225(a)(5) must include interest, fees, costs, and charges arising between the petition date and the effective date of the plan.

Collier, ¶ 1225.03[2] at 1225-14.

Section 506(b)'s applicability or inapplicability does not vary the § 1225(a)(5)(B)(ii) requirement that all allowed secured claims be provided payments that have a "value, as of the effective date of the plan," not less than the allowed amount of the claim. This requires an interest component on the Plan payments. Simply put, § 506(b) deals with the amount of the allowed secured claim when a creditor is oversecured. In contrast, § 1225(a)(5)(B)(ii) deals with the needed interest factor on plan payments to ensure all secured creditors receive the value of their allowed secured claim as of the effective date of the plan.

Without an interest component to Debtors' treatment of Les Bois' allowed secured claim, Debtors' Plan violates § 1225(a)(5)(B)(ii) and cannot be confirmed.

### 3.    Feasibility

Debtors bear the burden of demonstrating their plan is feasible. *See*, *e.g.*, *In re Yett*, 03.2 I.B.C.R. 122, 125 (Bankr. D. Idaho 2003), *In re Stallings*, 03.1 I.B.C.R. 77, 83 (Bankr. D. Idaho 2003); *McIntyre*, 95 I.B.C.R. at 206. "Debtors must show that they 'will be able to make all payments under the plan and to

MEMORANDUM OF DECISION - 19

comply with the plan.'" *Stallings*, 03.1 I.B.C.R. at 83 (quoting § 1225(a)(6)).

"The debtor is not required to guarantee the ultimate success of his plan, but only

to provide a reasonable assurance that the plan can be effectuated." *Id.* (quoting

*Millar v. Nauman (In re Nauman)*, 213 B.R. 355, 358 (9th Cir. BAP 1997)).

Given the Plan's current negative cash flow as identified by the Trustee,

and the Plan's failure to provide adequate interest on the allowed secured claim of

U.S. Bank, or any interest on Les Bois' allowed secured claim, the Plan is clearly

not feasible.

Les Bois also focuses feasability objections on Debtors' admitted need to

refinance their operations in 2012 in order to make the Plan work when the

proposed injunction terminates.  It, and other creditors, also note a feasibility

concern given the balloon payments required under the Plan.

The language of the Code requires Debtors to demonstrate that they will be

able to make the payments under the Plan, but not necessarily that they will be

able to do so without any further negotiations or commitments.  Balloon payments

are commonly part of chapter 12 plans.  Courts that have considered balloon

payments, and the need to refinance to make those payments, have looked at the

probability of successfully refinancing, particularly by evaluating the existing

equity in the property and projected equity at the time of refinancing.  *See In re*

*Showtime Farms, Inc.*, 267 B.R. 541, 545 (Bankr. E.D. Tex. 2000) (finding plan

MEMORANDUM OF DECISION - 20

was feasible and discussing limited risk to creditor given ability to foreclose in event of default and improved land values allowing possible refinance to pay balloon payment); *First Nat'l Bank of Boston v. Fantasia (In re Fantasia)*, 211 B.R. 420, 423-24 (1st Cir. BAP 1997) (determining debtors failed to demonstrate feasibility of a plan requiring refinancing because mere assertions that they would refinance to make balloon payments were insufficient to satisfy their burden); *In re Endicott*, 157 B.R. 255, 263 (W.D. Va. 1993) (finding lack of feasibility where secured property lacked equity, the balloon payment was not funded through future income, and there was no evidence as to the likelihood of refinancing).

Here, Debtors voiced an intent to refinance to take care of their nondischargeable debt to Les Bois and also to make the balloon payments called for under the Plan. Including such a provision is not per se improper. But Debtors did not provide any evidence or analysis of the likelihood that they could successfully refinance their property or make those payments.

The Court therefore must conclude that Debtors have failed to prove the Plan is feasible.

**CONCLUSION**

Given the several reasons addressed above that prohibit confirmation of the current Plan, the Court declines to address any further confirmation objections. It is clear that confirmation must be denied.

MEMORANDUM OF DECISION - 21

The Court will enter a separate order.

DATED:  October 17, 2005



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 22